UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DONNA J.,

                Plaintiff,

   v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. 3:18-cv-05296-TLF

ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS

Donna J. has brought this matter for judicial review of defendant's denial of her applications for disability insurance and supplemental security income (SSI) benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons below, the Court affirms defendant's decision to deny benefits.

                I.    <u>ISSUES FOR REVEW</u>

1. Did the ALJ provide adequate reasons to reject the opinions of an examining psychologist and a treating psychologist?

2. Did the ALJ err in determining that plaintiff's mental-health conditions did not meet the criteria for a listed impairment?

ORDER AFFIRMING DEFENDANT'S DECISION TO
DENY BENEFITS - 1

Did the ALJ provide adequate reasons to discount plaintiff's testimony?

## II. PROCEDURAL BACKGROUND

Plaintiff filed an application for disability insurance benefits in July 2006, alleging she became disabled as of February 10, 2006. Dkt. 10, Administrative Record (AR) 1357. Plaintiff's date-last-insured was September 30, 2011, so the relevant period for determining disability is between February 10, 2006, and September 30, 2011. AR 204, 1360; *see* 20 C.F.R. § 404.130. This case has been appealed before, and the detailed procedural history will only be described as necessary in the analysis below.

## III. STANDARD OF REVIEW

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). This requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the evidence. *Id.* (quoting *Desrosiers*, 846 F.2d at 576).

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court is required to weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

"If the evidence admits of more than one rational interpretation," that decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). That is, "'[w]here there is

conflicting evidence sufficient to support either outcome,'" the Court "'must affirm the decision actually made.'" *Id.* (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

IV. DISCUSSION

The Commissioner uses a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. At step four of that process, the claimant's residual functional capacity (RFC) is assessed to determine whether past relevant work can be performed, and, if necessary, at step five to determine whether an adjustment to other work can be made. *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). At step five, the Commissioner has the burden of proof, which can be met by showing a significant number of jobs exist in the national economy that the claimant can perform. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. § 404.1520(e).

A. Medical Opinion Evidence

An ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017). Even when a treating or examining physician's opinion is contradicted, an ALJ may only reject that opinion "by providing specific and legitimate reasons that are supported by substantial evidence." *Id.*

For the reasons below, the Court concludes that the ALJ offered sufficient reasons to discount the medical opinions of an examining psychologist and a treating psychologist regarding plaintiff's mental-health limitations.

### 1. Examining Psychologist C. Michael Regets, Ph.D.

Plaintiff challenges the ALJ decision to partially discount Dr. Regets's opinion. But plaintiff does not identify any error in the ALJ's evaluation of Dr. Regets's opinion regarding plaintiff's IQ limitations.

Plaintiff first contends that her former coworker's testimony that plaintiff required help in her work as a nursing assistant undermines the ALJ's conclusion that plaintiff can perform the mental requirements of unskilled work. Dkt. 15, p. 7. She contends that it was unreasonable for the ALJ to conclude that her ability to retain a semi-skilled job, while receiving help, "confirms her capacity to perform the unskilled work described in the [RFC] on a consistent basis." AR 1383; Dkt. 15, p. 8.

Dr. Regets performed cognitive testing on plaintiff in October 2007. AR 960-70. He found, among other results, that plaintiff had an "Extremely Low" verbal IQ score. AR 965. He concluded that plaintiff's "nonverbal reasoning abilities and her abilities to process visual information quickly are much better developed than her verbal comprehension skills and her working memory abilities," and that "[t]hese relative strengths may help [her] to engage in problem-solving tasks which are not language-based and process more complex information." AR 966. He found that "[a] relative weakness in her working memory abilities may make it more difficult for her to perform mental operations." *Id.* "Overall," he wrote, "her performance across these domains suggests some variability in her abilities." *Id.*

In its prior remand order, this Court considered an ALJ's decision to discount Dr. Regets's finding regarding plaintiff's verbal IQ score. AR 1521. The Court held that the ALJ erred in discounting that opinion based on plaintiff's "tendency to exaggerate and/or feign symptoms." AR 1521.

The Court observed that Dr. Regets based his opinion on objective findings and not plaintiff's subjective complaints. AR 1521 (citing *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008)). The Court found that the ALJ also erred in discounting Dr. Regets's opinions based on the observations of examining psychologist Andrea Shadrach, Psy.D.—in administering another IQ test, four years later—that plaintiff's responses were invalid on *that* test. AR 1520, 1522.

On remand, in the ALJ's decision that is now being reviewed by the Court, the ALJ gave Dr. Regets's opinions "partial weight." AR 1383. He analyzed the opinion differently than the prior ALJ: rather than finding these test results were based on unreliable self-reporting, the ALJ "considered [that] evaluation and assessed IQ scores in limiting the complexity of [plaintiff's] allowable work tasks." AR 1383. In assessing plaintiff's RFC, the ALJ found in part that she had the following cognitive limitations during the relevant period:

> The claimant was able to perform simple, routine, repetitive tasks consistent with unskilled work. She required low-stress work, defined as work requiring few decisions and few changes throughout the workday. . .. [I]nstruction regarding assigned work tasks must be one-on-one hands-on instruction, not written instruction. The claimant was capable of work performance at a standard/ordinary pace but not at a strict production-rate pace in which the individual has no control over the speed of the work.

AR 1370.

The ALJ also found, "that the severity of the cognitive issues" about which Dr. Regets opined, "is not entirely consistent with the claimant's semi-skilled work history." AR 1383. The ALJ explained that he credited plaintiff's coworker's testimony that plaintiff required help in charting at her previous job as a nursing assistant, AR 1793, but found that plaintiff's "ability to retain the job until stopped by physical impairments, confirms her capacity to perform the unskilled work described in the [RFC] on a consistent basis." AR 1383.

Plaintiff asserts that her former coworker's testimony shows that plaintiff "did not perform *unskilled* work on a regular and continuing basis, but continually obtained help from her friend." Dkt. 15, p. 7 (emphasis added). Yet it is undisputed that the work in question was semi-skilled, not unskilled. *See* AR 1392 (ALJ finding), 1451 (vocational expert testimony). The ALJ acknowledged and credited the coworker's testimony. AR 1383.

Thus, in the unskilled work that the RFC contemplates, plaintiff would be required to perform only "simple, routine, repetitive tasks." AR 1370. Plaintiff does not identify any error in the ALJ's decision to discount Dr. Regets's opinion based in part on plaintiff's ability to maintain a semi-skilled job. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999) (inconsistency with daily activities is valid reason to discount opinion); *Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992) (working with impairment supports finding that impairment is not disabling).

Finally, plaintiff notes Dr. Regets opined that she would qualify for accommodations in some types of job: "work environments where her limitations impair her ability to learn or demonstrate her knowledge, skills, and abilities." AR 967. Plaintiff asserts that this shows that she cannot perform "other work" at step five, citing Social Security Ruling (SSR) 11-2p. Dkt. 15, pp. 8-9.

That ruling states:

> When we determine whether a person can do other work that exists in significant numbers in the national economy, we do not consider whether he or she could do so with accommodations, even if an employer would be required to provide reasonable accommodations under the Americans with Disabilities Act of 1990.

SSR 11-2p, at *9 ("Documenting and Evaluating Disability in Young Adults").

*See* AR 967. Plaintiff does not explain how Dr. Regets would be qualified to offer the legal conclusion that she could not perform any work without reasonable accommodations. *See* 20 C.F.R. §§ 404.1527(d)(1) ("ultimate issue" opinions include those that a claimant is " 'disabled' or 'unable to work'"). Accordingly, the ALJ did not err in considering this aspect of Dr. Regets' opinion in the ALJ's RFC assessment.

    2.    <u>Treating Psychologist Stephen Langer, Ph.D.</u>

Dr. Langer treated plaintiff in 2007 and 2008. AR 954. On several occasions, he gave opinions on plaintiff's functional limitations. AR 915, 917, 936, 954, 984, 1071, 2195.

In a March 2007 letter following his first meeting with plaintiff, Dr. Langer diagnosed her with major depressive disorder (pain disorder, chronic), and proposed a 90-day treatment plan. AR 915; *see* AR 2195 (adding in follow-up letter that plaintiff's work-related-injury was "the problem which has maintained her depression"). He reported in an August 2008 letter that plaintiff "appears to be coping somewhat better with her condition." AR 939.

In a September 2008 letter giving his most detailed opinion, Dr. Langer wrote that plaintiff was markedly limited in numerous areas:

> the ability to remember locations and, work like procedures, the ability to sustain ordinary routine without supervision, the ability to work in coordination with or proximity to others without being distracted by them, the ability to complete a normal workweek without interruptions, and the ability to travel to familiar places or use public transportation.

AR 954. He added that plaintiff was moderately limited in several other areas: "the ability to interact appropriately with the general public, the ability to accept instructions and respond appropriately to criticism from supervisors, the ability to understand, remember, and carry out detailed instructions, and the ability to maintain attention and concentration for extended periods." *Id.* Finally, Dr. Langer explained:

> Ms. Jordan's psychiatric condition exacerbates her perception of pain. She is not capable of low stress work, due to how she was treated at her last job. I expect that she would likely miss more than 3 days of work per month as a result of her impairments. Her symptoms and limitations date back to July 11, 2005, and are ongoing; I expect them to last for at least 12 months.

AR 954.

Dr. Langer offered similar opinions in an October 2008 letter. AR 984 (adding that plaintiff was markedly limited in performing at a consistent pace without an unreasonable number and length of rest breaks). He also opined to identical limitations in an unsigned, undated "impairment questionnaire" check-box form. AR 917. And, Dr. Langer wrote a letter to a prior ALJ in January 2011, further explaining the bases of his opinions. AR 1071.

In considering Dr. Langer's opinions at step three, the ALJ noted that Dr. Langer's treatment notes "do not show any mental status exams or other observations regarding the claimant's memory, concentration, or other vocational functioning." AR 1362. In his RFC analysis, the ALJ gave Dr. Langer's opinions "little weight," stating several reasons. AR 1388. At least three of these reasons were specific and legitimate and supported by substantial evidence in the record.

The ALJ acknowledged that Dr. Langer's opinions are entitled to special consideration because he is a treating therapist. AR 1388. But the ALJ gave those opinions less weight because of "Dr. Langer's reliance on the claimant's subjective reports, without clinical findings or apparent independent observations by the doctor except in conclusory letters or forms." *Id.*

This is a specific and legitimate reason to discount a treating source's opinion. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (ALJ may reject opinion based "to a large extent" on properly discounted self-reports). The record supports the ALJ's finding.

In his September 2008 letter, Dr. Langer stated that he had made "clinical findings of poor memory, appetite disturbance with weight change, sleep and mood disturbance, emotional lability, recurrent panic attacks, anhedonia, paranoia, feelings of worthlessness, difficulty thinking and concentrating, history of suicidal ideation, social withdrawal, decreased energy, intensive recollections of a traumatic experience, and somatization unexplained by an organic disturbance." AR 954.

As the ALJ indicated, none of Dr. Langer's visit notes contain clinical findings or mental status exams. *See* AR 1071-82. Those notes consist entirely of summaries of plaintiff's self-reports at those visits. *See id.* The sole objective findings in Dr. Langer's records appear to be an observation that plaintiff showed an agitated and depressed affect at their first visit. *See* AR 915; *see generally* AR 914-22, 937-39, 954, 984, 1071-82, 2195. The quality of a doctor's explanation and amount of support it has from clinical findings are important factors in weighing the doctor's opinions. 20 C.F.R. § 404.1527(c)(3).

This case is distinguishable from *Buck v. Berryhill*, in which the United States Court of Appeals for the Ninth Circuit held it was error for an ALJ to discount the examining physicians' opinion on the basis that it "was based in part on [the claimant's] self-report." 869 F.3d 1040, 1049 (9th Cir. 2017). The Court noted that the examining doctor "also conducted a clinical interview and a mental status evaluation." *Id.* The Court in *Buck* decided the interview and mental status evaluation were "objective measures and cannot be discounted as a 'self-report.'" *Id.*

Unlike the plaintiff in *Buck*, plaintiff in this case points to no clinical findings or performed mental status examinations in the treating doctor's records. *See id.*; AR 1071-82 (Dr. Langer's transcribed visit notes). Accordingly, the ALJ had substantial evidence for discounting

Dr. Langer's opinions as based "to a large extent" on plaintiff's self-reports and not on clinical evidence [as discussed below, the ALJ did not err in discounting plaintiff's self-reports]. *See Tommasetti*, 533 F.3d at 1041.

The ALJ next found internal inconsistency in certain reports by Dr. Langer. AR 1388-89. In particular, the ALJ found that it was inconsistent for Dr. Langer to opine that plaintiff -- a) has no limitation in understanding, remembering, and carrying out 1- or 2-step instructions and only moderate limitation in understanding, remembering, and carrying out detailed instructions; but also opined plaintiff -- b) was "markedly limited in the ability to remember locations and work-like procedures." AR 1388-89; *see* AR 920, 954, 984. The ALJ explained that he found it "reasonable to conclude" that someone with this marked limitation would not be able to follow simple instructions without limitations and detailed ones with only moderate limitations. AR 1389.

"Determining whether inconsistencies are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount the opinions of [treating or examining doctors] falls within this responsibility." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999); *see also Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (upholding ALJ's rejection of internally inconsistent medical opinion). The ALJ's explanation of the inconsistencies between limitations in Dr. Langer's opinion is reasonable and supported by substantial evidence.

Finally, the ALJ noted that Dr. Langer provided no explanation for several of the limitations he assessed. These included Dr. Langer's opinions that plaintiff is markedly limited in sustaining an ordinary routine without a supervisor; markedly limited in completing a normal workweek without interruptions from psychological symptoms and in performing at a consistent

pace without an unreasonable number and length of rest periods; incapable of even low-stress work; and likely to miss more than three work days per month due to impairments and/or treatment. AR 1389-90.

An ALJ need not accept a brief and conclusory medical opinion when the ALJ faces conflicting evidence regarding the claimant's condition. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Here the ALJ described in detail Dr. Langer's lack of explanation for the limitations he found and the evidence that weighs against them. AR 1389-90.

The ALJ also noted that when an ALJ in a previous hearing in plaintiff's case asked Dr. Langer to provide specific observations and test results that supported his opinions, he did not do so – instead, he repeated plaintiff's subjective reports without explaining a basis for adopting them. AR 1390; *see* AR 1071-72. Plaintiff does not cite any evidence that would undermine these findings. This specific, legitimate reason to discount Dr. Langer's opinion is supported by substantial evidence. *See Tonapetyan*, 242 F.3d at 1149.[1]

B. <u>Step Three Listing Determination</u>

Plaintiff contends the ALJ erred at step three of the sequential evaluation process. In particular, she challenges the ALJ's finding that plaintiff does not have an impairment or combination of impairments that meets listing 12.05B. *See* AR 1365-70; 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05B (version effective January 17, 2017).

---

[1] Plaintiff contends that the ALJ also erred by failing to address Dr. Akins's opinion that Dr. Lager's opinions "are valid" for the period when Dr. Langer treated plaintiff and that this "may be the basis for a closed period." Dkt. 15, p. 12; AR 1440. Plaintiff did not assign error to the ALJ's analysis of Dr. Akins's opinion or to the ALJ's failure to find a closed period of disability. *See* Dkt. 15, p. 1. The Court declines to reach this issue because it was not distinctly set forth as a separate error, nor was it sufficiently analyzed in the briefing. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692, n. 2 (9th Cir. 2009) (rejecting "any invitation" to find error where the claimant failed to explain how the ALJ harmfully erred); *Carmickle*, 533 F.3d at 1161 n.2 (court need not address issue not argued with specificity in plaintiff's brief).

At step three, the ALJ must evaluate the claimant's impairments to decide whether they meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R § 404.1520(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If they do, the claimant is deemed disabled. 20 C.F.R § 404.1520(d). The burden of proof is on the claimant to establish he or she meets or equals any of the impairments in the listings. *Tackett*, 180 F.3d at 1098. "A generalized assertion of functional problems is not enough to establish disability at step three." *Id.* at 1100 (citing 20 C.F.R. § 404.1526). An ALJ "must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

To meet a listing, a claimant "must have a medically determinable impairment(s) that satisfies all of the criteria in the listing." 20 C.F.R. § 404.1525(d); *see also* SSR 83–19 (rescinded) (impairment meets a listed condition "only when it manifests the specific findings described in the set of medical criteria for that listed impairment").

In its prior remand order, this Court found that the ALJ's error in discounting Dr. Regets's findings regarding plaintiff's IQ scores was not harmless because those findings could affect the ALJ's determination of whether plaintiff met Listing 12.05C. AR 1523.

On remand, the ALJ observed that "the analysis of that listing section was changed significantly when the 12.00 listing were amended in January of 2017." AR 1368. In particular, listing 12.05C no longer exists. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05 (effective Jan. 17, 2017).

The ALJ applied the new rules, which the Social Security Administration guidance states are to be applied "in any case in which we make a determination or decision"—whether or not the case was filed or received a previous adjudication before the regulation became applicable.

*See Revised Medical Criteria for Evaluating Mental Disorders*, 81 Fed. Reg. 66138-01, 2016 WL 5341732(F.R.) (effective Jan. 17, 2017); *see Andres G. v. Comm'r of Soc. Sec. Admin.*, No. 3:17-CV-00597-JE, 2018 WL 7690317, at *4 (D. Or. Dec. 27, 2018), *report and recommendation adopted*, No. 3:17-CV-00597-JE, 2019 WL 1270926 (D. Or. Mar. 18, 2019)) (holding failure to apply this regulation after effective date was "clear error").

The ALJ thus applied the updated version of Listing 12.05, which consists of parts A and B. AR 1368-69. Plaintiff contends that she satisfies Listing 12.05B. That listing requires all three of the following criteria:

1. Significantly subaverage general intellectual functioning evidenced by a or b:

    a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
    b. A full scale (or comparable) IQ score of 71–75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

    a. Understand, remember, or apply information (see 12.00E1); or
    b. Interact with others (see 12.00E2); or
    c. Concentrate, persist, or maintain pace (see 12.00E3); or
    d. Adapt or manage oneself (see 12.00E4); and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. § Pt. 404, Subpt. P, App. 1.

The parties dispute whether the ALJ correctly found plaintiff did not satisfy subsection (2) of 12.05B. Dkt. 15, p. 13; Dkt. 18, p. 5; *see* AR 1366-69. The ALJ found that although

plaintiff had marked limitations in understanding, remembering, and applying information, she was only moderately limited in functioning socially, concentrating, persisting, or maintaining pace, and adapting or managing herself. *Id.* The ALJ concluded that because plaintiff did not show marked limitations in two of the four areas of mental functioning—or extreme limitations in one—she did not satisfy Listing 12.05B. AR 1369.

Plaintiff contends that this finding was error because the ALJ should have found that plaintiff had marked limitations in her ability to adapt or manage herself. Dkt. 15, pp. 13-15.

The burden of proof is on the claimant to establish he or she meets or equals any of the impairments in the Listings. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). This Court will uphold an ALJ's finding that a plaintiff does not meet listing criteria if substantial evidence supports that finding. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

The Social Security regulations define "[m]oderate limitation" as a "fair" ability to function "independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00F(2). They define "[m]arked limitation" as a "seriously limited" ability to do so. *Id.*

Here, substantial evidence supports the ALJ's finding that plaintiff was moderately limited in her ability to adapt or manage herself. The ALJ cited the testimony of medical expert Faren R. Akins, Ph.D., who opined, after reviewing the records from Dr. Langer, Dr. Shadrach, and Dr. Regets, that plaintiff's limitations in this area "settled more toward the moderate range of moderate-to-marked." AR 1368. The ALJ also found that plaintiff and her daughter "described functioning more consistent with moderate limitations than marked." *Id.*

ORDER AFFIRMING DEFENDANT'S DECISION TO
DENY BENEFITS - 14

In contesting this finding, plaintiff points specifically to two items of evidence that she asserts show greater limitations than the ALJ found in this area. First, she cites Dr. Langer's opinion that plaintiff could not maintain a regular schedule, AR 984. Dkt. 14, pp. 13-15. However, as discussed above, the ALJ gave specific and legitimate reasons to accord less weight to Dr. Langer's opinions.

Second, plaintiff cites Dr. Regets's opinion that plaintiff would need lifetime reasonable accommodations in the workplace. As noted above, Dr. Regets wrote that plaintiff "qualifies for accommodations and/or modifications to education and work environments where her limitations impair her ability to learn or demonstrate her knowledge, skills, and abilities." AR 967.

But Dr. Regets's opinion did not mandate a finding of marked limitations in adapting and managing oneself. *See* AR 967. Dr. Regets did not imply that plaintiff's limitations would "impair her ability to learn or demonstrate her knowledge, skills, and abilities" in *all* work environments.

Moreover, Dr. Regets was offering a legal conclusion under the Americans with Disabilities Act; he did not purport to opine on how limited plaintiff was in her ability to adapt or manage herself—that is, to "regulate emotions, control behavior, and maintain well-being in a work setting." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E4. Indeed, his opinion about accommodations seems to regard a different area of functioning.

Dr. Regets gave a more nuanced opinion regarding plaintiff's "General Ability" stating that: "[Dr. Regets'] hunch is that test scores do not fully tap the combined abilities of emotional and intelligence quotient. Her personality and social capability likely pull her through in situations where deficits in cognitive strength can be overlooked." AR 967. Despite receiving help in her past work, Dr. Regets found, "[w]ork history and aptitude level suggest [plaintiff] is

capable of learning lengthy repetitive procedures. . .. Her learning ability suggests she is capable of applying common sense understanding to carry out detailed but uninvolved written or oral instructions." *Id.* Plaintiff "can deal with problems involving a few concrete variables in or from standardized situations." *Id.* Dr. Regets added that plaintiff "would train best in situations that are relatively slow paced and build upon over learned skills," whereas "[s]he would likely not perform too well in work situations that were restricted, had lots of distraction, required deadlines and high productivity demands." *Id.*

In short, Dr. Regets's opinion regarding reasonable accommodations does not undermine the substantial evidence supporting the ALJ's finding regarding plaintiff's ability to adapt and manage herself.

In her reply brief, plaintiff reviews the medical evidence and requests that the Court draw different conclusions than the ALJ. Dkt. 19, pp. 3-7. This is outside the Court's standard of review of an ALJ's decision, which is for a lack of substantial evidence or legal error, not to draw new conclusions from the record. *See Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" [internal quotation marks omitted]).

Although ALJ might permissibly have drawn a different conclusion from the evidence—including the evidence plaintiff cites from Dr. Shadrach's reports, plaintiff's self-reports, and Dr. Regets and Dr. Langer's opinions—the fact that the ALJ drew a different rational conclusion is not a basis for reversal. *See Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("If the evidence admits of more than one rational interpretation," court must uphold ALJ's decision).

C. <u>Plaintiff's Testimony</u>

Finally, plaintiff contends that the ALJ erred in discounting her symptom testimony.

In weighing a plaintiff's testimony, an ALJ must use a two-step process. First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the alleged symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). If the first step is satisfied and there is no evidence of malingering, the second step allows the ALJ to reject the claimant's testimony of the severity of symptoms if the ALJ can provide specific findings and clear and convincing reasons for rejecting the claimant's testimony. *Id.*

On the other hand, if affirmative evidence does show malingering, this relieves the ALJ from the burden of providing clear and convincing reasons to discount the claimant's testimony. *Baghoomian v. Astrue*, 319 Fed. App'x 563 (9th Cir. 2009). Instead, the ALJ must give reasons that are specific and legitimate. *See Olivar v. Berryhill*, No. 2:17-CV-00657-DWC, 2017 WL 4857089, at *5 (W.D. Wash. Oct. 27, 2017). The ALJ does not need to make a specific finding of malingering, if affirmative evidence in the record shows malingering. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 n.1 (9th Cir. 2008).

Here, plaintiff testified about symptoms including depression, panic attacks, difficulty reading, memory and focus problems, and discomfort around people. AR 72-80, 86-96, 138-49, 1448-50.

The ALJ discounted plaintiff's testimony about these symptoms' "intensity, persistence, and limiting effects" because "numerous inconsistencies in the record raise significant concern about the reliability of the claimant's statements regarding the intensity, persistence, and limiting effects of her symptoms." AR 1372. He also found the objective medical evidence to be inconsistent with the severity of plaintiff's reported symptoms. *Id.*

The ALJ noted, in particular, that Dr. Shadrach found plaintiff to be a "questionable historian" in a 2011 psychological exam, observing that she gave evasive answers and appeared to exaggerate her symptoms. AR 1372, 1378; *see* AR 1097, 1101. The ALJ found in the record a pattern of subjective complaints "disproportionate to[ ] the generally mild objective medical findings." AR 1372; *see* AR 800-01, 805, 2055. He also found "numerous inconsistencies in the claimant's reports about her history, her symptoms, and her functional capacity," which he found undermined the reliability of her allegations. AR 1378-80. He described these inconsistencies in detail. *Id.*

Plaintiff asserts that the ALJ erred in discounting her testimony, but she does not challenge most of this reasoning. Dkt. 15, p. 15. Instead, she cites only Dr. Regets's finding that plaintiff did not appear to give poor effort on cognitive testing, AR 969, and argues that this observation "might explain Dr. Shadrach's possible malingering findings as well as Plaintiff's exaggeration and inconsistencies cited by the ALJ." Dkt. 15, p. 15.

Plaintiff does not identify any error in the ALJ's analysis. One examining psychologist's observation that plaintiff gave good effort on an exam does not show that the ALJ lacked substantial evidence to find numerous inconsistencies in her statements elsewhere in the record. *See* AR 1378-80. Because, as the ALJ documented, the record contains affirmative evidence of malingering, he was required to give only specific and legitimate reasons to discount plaintiff's testimony. *See Olivar*, 2017 WL 4857089, at *5.

The ALJ's reasoning complies with both that standard and the higher, clear and convincing reasons standard. *See Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistent testimony about symptoms is clear and convincing reason to discount subjective allegations). Accordingly, the ALJ did not err in discounting plaintiff's testimony.

## CONCLUSION

Based on the above analysis, the Defendant's decision to deny benefits is AFFIRMED.

Dated this 4th day of September, 2019.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge