UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DONNA J.,

                    Plaintiff,

        v.

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.

Case No. 3:18-cv-05296-TLF

ORDER ON PLAINTIFF'S MOTION
TO ALTER OR AMEND THE
JUDGMENT PURSUANT TO
FEDERAL RULE OF CIVIL
PROCEDURE 59(E)

        On September 5, 2019, this Court entered judgment for the Defendant, finding
that Defendant's decision to deny Plaintiff's application for disability insurance benefits
was supported by substantial evidence. *See* Dkt. 20, 21. Presently before the Court is
Plaintiff's Motion to Alter or Amend Judgment pursuant to Federal Rule of Civil
Procedure 59(e) ("Motion"). Dkt. 22.

        The Court may alter or amend a judgment under Rule 59(e) where the Court has
committed clear error. *See Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003). Rule
59(e) provides an "extraordinary remedy, to be used sparingly in the interests of finality
and conservation of judicial resources." *Id.* (citation and internal quotation marks
omitted). Plaintiff argues the Court should alter the judgment and reverse Defendant's
decision to deny benefits because the Court's decision is based on a clear error of law.
Dkt. 22, pp. 1-2.

After hearing oral argument, on October 15, 2019 this Court issued an order withdrawing its initial order and judgment and directing the parties to submit additional briefing on the question of whether evidence of statements, opinions, and assessments from Stephen Langer, Ph.D. and Farren Ray Akins, Ph.D., J.D. was properly considered by the ALJ in the decision finding that Plaintiff was not disabled. Dkt. 27, p. 1. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule MJR 13. This matter has been fully briefed. Dkt. 30, 32, 33.

For the reasons set forth below, Plaintiff's Motion to Alter or Amend Judgment is GRANTED and this case is remanded for an award of benefits as to the period between February 10, 2006 and August 31, 2011.

I. <u>Whether the ALJ erred in evaluating evidence from Dr. Langer and Dr. Akins</u>

In assessing an acceptable medical source – such as a medical doctor – the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

A. <u>Dr. Langer</u>

Dr. Langer evaluated Plaintiff on March 19, 2007. AR 1073. And Dr. Langer continued to have a treating relationship with Plaintiff including 14 appointments; his last session with her was on October 15, 2008. AR 914-16, 937-39, 976-82, 984, 1070-82, 2195.

On January 2, 2008, Dr. Langer opined that Plaintiff would have a range of moderate and marked work-related limitations stemming from her mental impairments. AR 917-26.

On September 3, 2008, Dr. Langer assessed Plaintiff as having marked limitations in the ability to remember locations and work-like procedures; sustaining ordinary routine without supervision; working in coordination with or proximity to others without being distracted by them; completing a normal workweek without interruptions; and traveling to unfamiliar places or using public transportation. AR 954. Dr. Langer stated that Plaintiff would have moderate limitations in interacting appropriately with the general public; accepting instructions and responding appropriately to criticism from supervisors; understanding, remembering, and carrying out detailed instructions; and maintaining attention and concentration for extended periods. *Id.*

Dr. Langer stated that Plaintiff's psychiatric condition exacerbated her perception of pain, and that she was not capable of performing even low stress work. *Id.* Dr. Langer opined that Plaintiff would likely miss more than 3 days of work per month due to her impairments, that her symptoms were ongoing and dated back to July 11, 2005, and were expected to last at least 12 months. *Id.* In October 2008, Dr. Langer issued a

similar opinion, this time stating that Plaintiff was incapable of maintaining any type of competitive employment. AR 984.

In discounting Dr. Langer's opinion, the ALJ acknowledged that Dr. Langer is a treating source who is normally entitled to deference. AR 1388. *See* 20 C.F.R. § 404.1527(b)(2) ("Generally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."); *see also Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1222 (9th Cir. 2010) (noting that SSA generally gives more weight to the opinion of a treating source).

However, the ALJ assigned "limited weight" to Dr. Langer's opinions, reasoning that: (1) Dr. Langer relied on Plaintiff's self-reports, without providing clinical findings or independent observations to support his opinion, except in conclusory letters and forms; (2) Dr. Langer's opinions were internally inconsistent; (3) Dr. Langer did not sufficiently explain his opinion; (4) Dr. Langer did not define what he meant by "low stress" work; and (5) Dr. Langer's opinions were inconsistent with Plaintiff's own statements to other physicians. AR 1388-90.

With respect to the ALJ's first reason, an ALJ may reject a physician's opinion "if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Morgan v. Comm'r. Soc. Sec. Admin.,* 169 F.3d 595, 602 (9th Cir. 1999)). This

situation is distinguishable from one in which the doctor provides her own observations in support of her assessments and opinions. *See Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008). "[W]hen an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citing *Ryan*, 528 F.3d at 1199-1200).

Here, Dr. Langer utilized objective measures such as clinical interviews and relied on his own observations in forming his opinion, and there is no evidence that he relied largely upon Plaintiff's self-reports. AR 914-16, 937-39, 976-82, 984, 1070-82, 2195. *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (a psychiatrist's clinical interview and mental status examinations are "objective measures" which "cannot be discounted as a self-report" and noting that psychological diagnoses will always depend partly on the patient's self-report, as well as on the clinician's observations of the patient) (internal citations omitted).

As for the ALJ's second reason, an internal inconsistency can serve as a specific and legitimate reason for discounting a physician's opinion. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999); *see also Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (upholding ALJ's rejection of an internally inconsistent medical opinion).

In finding Dr. Langer's opinions internally inconsistent, the ALJ noted that in his January 2008 opinion, Dr. Langer assessed Plaintiff as having marked limitations in remembering locations and work-like procedures, but no limitations in the ability to understand, remember, and carry our 1 or 2 step instructions, and only moderate

limitation in the ability to understand, remember, and carry out detailed instructions. AR 1388-89.

The ALJ reasoned that if an individual were unable to remember locations and work-like procedures, she would have more than moderate limitation in understanding, remembering, and carrying out detailed instructions and would have some degree of limitation in performing 1 and 2 step instructions. AR 1388-89.

The ALJ's decision is not supported by substantial evidence, because as a factual matter there is not an inconsistency, as discussed above, in Dr. Langer's opinion. The form completed by Dr. Langer contains the heading "Understanding and Memory", which contains the three limitation categories discussed above. AR 920. The first category deals with memory, while the latter two deal with understanding and cognition, and ask for an opinion on different aspects of Plaintiff's functional ability. Further, Dr. Langer opinion is consistent with his treatment notes, in which he noted that Plaintiff had a poor memory, and that she missed several appointments with him after she forgot about them. AR 984, 1071. Dr. Langer's opinion is also consistent with the record, which indicates that Plaintiff required some assistance from co-workers to complete basic work-related mental tasks. AR 1793.

With respect to the ALJ's third reason, a finding that a physician has not sufficiently explained his or her opinion can serve as a specific and legitimate reason for discounting that opinion. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that

medical opinion."); *see also Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) ("[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings.")

First, Dr. Langer completed a check box form in assessing Plaintiff's limitations, yet the record also shows that he based this opinion on his extensive treating relationship with Plaintiff. *See Garrison v. Colvin*, 795 F.3d 995, 1008 (9th Cir. 2014) (Check box forms completed by physicians that have significant experience with a patient and are based on numerous records are entitled to weight that unsupported and unexplained check box forms do not merit). Second, Dr. Langer provided more than one explanation for his opinion, once in September 2008 and again in October 2008, and specifically stated that his opinion was based on his consistent treatment of Plaintiff from March 2007 to October 2008. AR 954, 984. In both cases, Dr. Langer explained in detail the Plaintiff's diagnoses, the clinical findings to support his diagnoses, his assessment of Plaintiff's work-related mental limitations based on these impairments, and his opinion that Plaintiff's impairments had been disabling since July 2005. *Id.*

Third, the ALJ reasoned that Dr. Langer did not explain his opinion that Plaintiff had marked limitations in sustaining an ordinary routine without supervision; completing a normal work week without interruptions from psychologically based symptoms; and performing work at a consistent pace. AR 1389. The ALJ reasoned that Dr. Langer's opinion concerning sustaining an ordinary routine without supervision was inconsistent with the record, which indicated that Plaintiff was able to perform several routine activities of daily living without supervision. *Id; see also See Morgan v. Comm'r Soc.*

*Sec. Admin.,* 169 F.3d 595, 600 (9th Cir.1999) (an ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting). As discussed above, Dr. Langer explained in detail the reasons why he assessed Plaintiff as having marked mental limitations.

Further, none of the basic activities of daily living the ALJ cites as being inconsistent with Dr. Langer's opinion – caring for her son, preparing meals, and performing basic household chores – are transferrable to a work setting in a way that would detract from Plaintiff's credibility or cast doubt on Dr. Langer's opinion. AR 1389; see *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir.2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled."), citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989); *Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017) ("House chores, cooking simple meals, self-grooming, paying bills, writing checks, and caring for a cat in one's own home, as well as occasional shopping outside the home, are not similar to typical work responsibilities.").

As for the ALJ's fourth reason, an ALJ may reject a medical opinion that is "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005), citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir.2001); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (holding that

statement that the plaintiff would have "decreased concentration skills" was too vague to be useful in the disability determination); 20 C.F.R. § 404.1527(c)(3).

In his September 2008 narrative statement, Dr. Langer opined that Plaintiff was incapable of performing even low stress work. AR 954. In October 2008, Dr. Langer clarified his opinion by stating that Plaintiff was incapable of maintaining any type of gainful employment. AR 984. *See Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012) (a physician's opinion that it was unlikely that the claimant could sustain full-time competitive employment is not a conclusion reserved to the Commissioner, but is "an assessment based on objective medical evidence of [the claimant's] likelihood of being able to sustain full-time employment given the many medical and mental impairments [claimant] faces and her inability to afford treatment for those conditions.") (citing 20 C.F.R. § 404.1527(d)(1)). Dr. Langer assessed specific limitations consistent with his finding that Plaintiff was incapable of performing even low stress work. AR 917-22. As such, the ALJ erred in finding that Dr. Langer's opinion was insufficiently specific.

With respect to the ALJ's fifth reason, the ALJ reasoned that Dr. Langer's opinion that Plaintiff had marked limitations in working in proximity to others without being distracted by them was inconsistent with Plaintiff's statements to E. Andrea Shadrach, Psy.D and C. Michael Regets, Ph.D., that she had always gotten along well with co-workers and preferred a job that involved interaction with co-workers. AR 1388; *see* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").

First, these isolated comments cannot, by themselves, be sufficient to discount the detailed and well-supported opinion of Plaintiff's treating physician Dr. Langer. *See*

1    *Ghanim v. Colvin*, 763 F.3d 1154, 1166 (9th Cir. 2014); *see also Attmore v. Colvin*, 827

2    F.3d 872, 875 (9th Cir. 2016) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.

3    1999) (the Court "cannot affirm . . . 'simply by isolating a specific quantum of supporting

4    evidence,' but 'must consider the record as a whole, weighing both evidence that

5    supports and evidence that detracts from the [Commissioner's] conclusion.'").

6         Further, the decision is not based on substantial evidence because the ALJ did

7    not have factual support in characterizing Plaintiff's presentation to Dr. Shadrach and

8    Dr. Regets as being inconsistent with the findings of Dr. Langer. Although the record

9    shows Plaintiff told Dr. Shadrach that she got along with her co-workers and supervisors

10   at her most recent job, during her evaluation with Dr. Shadrach, Plaintiff also stated that

11   she left her job because she had difficulty making decisions and being around crowds.

12   AR 1098. Plaintiff was extremely agitated with Dr. Shadrach's staff and those who

13   denied her disability claim, with Dr. Shadrach stating that Plaintiff was "guarded and

14   petulant" during her clinical interview. AR 1097. The Plaintiff also explained that her

15   mental health symptoms made it difficult for her to go places, interact with others, and

16   maintain friendships. *Id.* Despite the preference she expressed to Dr. Regets

17   concerning working with others, Plaintiff described similar symptoms during his

18   examination. AR 961-62; *see Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998)

19   ("In essence, the ALJ developed [her] evidentiary basis by not fully accounting for the

20   context of materials or all parts of the . . . reports. [Her] paraphrasing of record material

21   is not entirely accurate regarding the content or tone of the record.").

22         As such, the Court cannot say that the ALJ provided specific, legitimate reasons

23   for discounting Dr. Langer's opinions.

24

25

B.  Dr. Akins

On November 13, 2017, Dr. Akins testified as a medical expert during the hearing preceding the ALJ's unfavorable decision. AR 1414-42. Dr. Akins testified that he reviewed the entire medical record and felt he had sufficient information to offer an opinion regarding Plaintiff's impairments. AR 1415. Dr. Akins testified that based on his review of the record, Plaintiff had the severe impairments of pain disorder, major depressive disorder, anxiety disorder, and a history of learning disorder. *Id.*

Dr. Akins testified that there was a "certainty" that Plaintiff had marked mental limitations, and that there were "some data points that do indicate some severe limitations, some marked limitations." AR 1416. Dr. Akins stated that the primary source of information regarding Plaintiff's mental impairments was Plaintiff's treating psychologist Dr. Langer, who saw Plaintiff "a handful" of times between March 2007 and January 2008. AR 1416, 1423, 1434-35.

Dr. Akins disagreed with Dr. Langer's opinion that Plaintiff would be unable to perform full-time work, reasoning that it was inconsistent with the treatment record and a September 1, 2011 psychological evaluation from Dr. Shadrach, who opined that Plaintiff would have marked limitations in understanding, remembering, and carrying out instructions, but no more than moderate work-related mental limitations in other domains. AR 1416-17, citing AR 1097-1102, 1125-27.

Dr. Akins stated that Dr. Langer had provided a "fairly small snapshot" of Plaintiff's functioning between March 2007 and January 2008, but his opinions about Plaintiff's limitations were consistent, and he had "some evidence" to support his opinion. AR 1424. Dr. Akins stated that Dr. Shadrach's 2011 opinion may not have been

inaccurate despite its apparent conflict with Dr. Langer's 2008 opinion, since Plaintiff's mental health treatment may have improved her condition during the interim, especially given the apparent lack of mental health treatment in 2009 and 2010. AR 1424-25.

Plaintiff's attorney later explained that she did not receive treatment during this period because she did not have access to medical care, to which Dr. Akins responded that he believed an individual with sufficient persistence and motivation would be able to obtain medical care despite an inability to pay. AR 1435-36.

Dr. Akins began by assessing the paragraph B criteria. The ALJ must evaluate the paragraph B criteria to determine if the severity of the claimant's mental impairment meets or is medically equal to the criteria of a listed impairment. 20 C.F.R. Part 404, Subpart P, Appendix 1. To meet the paragraph B criteria, a claimant must have an extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. 20 C.F.R. pt. 404, subpt. P app. 1, § 12.00(E).

Dr. Akins opined that Plaintiff had moderate to marked limitations in understanding, remembering, and applying information, with Plaintiff's limitations being closer to the "marked end of the equation" due to a finding that Plaintiff had a verbal IQ of 67, but also expressed some uncertainty about this finding, citing test results from Dr. Shadrach's examination which suggested that Plaintiff may have been exaggerating or malingering. AR 1417-18, 1426-27 citing AR 1100-01. Dr. Akins also expressed uncertainty that a person with an IQ of 67 could perform Plaintiff's past work as a mental health technician. AR 1427.

Dr. Akins assessed Plaintiff as having moderate to marked limitations in interacting with others, moderate limitations in maintaining concentration, persistence, and pace, and moderate to marked limitations in adapting and managing herself, again citing the opinions of Dr. Langer and Dr. Shadrach. AR 1418-20.

Dr. Akins concluded that he could not say with a medical certainly that Plaintiff had marked limitations in two of the paragraph B domains. AR 1420. Dr. Akins opined that the record "potentially" would support a finding of a closed period of disability consistent with Dr. Langer's opinion, but that there was insufficient information to support a finding of disability in 2011, when Dr. Shadrach examined Plaintiff. AR 1425-26. Dr. Akins stated that because Dr. Langer's treatment notes did not cover a period of at least 12 months, he was unable to offer an opinion that Plaintiff was disabled. AR 1440-41; *see* 20 C.F.R. § 404.1509 (a claimant's impairment must have lasted or must be expected to last for a continuous period of at least 12 months to be disabling). Based on his review of the record, Dr. Akins opined that Plaintiff:

> would do better in a situation where there's only occasional interaction with peers, and co-workers, and the general public. I think educational somehow gets translated into up to one-third of a time, but in any event, some substantial reduction in the amount of time the person needs to be around other people, or interacting with the public, co-workers, or supervisors. That simple repetitive task would be more likely to be successfully completed with complex tasks, perhaps maybe beyond the scope of the person's ability. And, I would say that because the person has had past difficulties, and a diagnosis of anxiety, that a time pressure environment would not be a good situation. So, claimant would probably do better with some kind of piecemeal job, sorting bins, picking out clothes, something along those lines, but not something where there's a timed urgency, or timed element to the job.

AR 1428-29. Dr. Akins opined that it would be a good idea for the agency to appoint a payee to manage Plaintiff's benefits. AR 1429-30.

When questioned by Plaintiff's attorney, Dr. Akins acknowledged that the verbal IQ score of 67 did not come from Dr. Shadrach's 2011 examination, in which she expressed concerns that Plaintiff was malingering, but from an earlier 2007 examination conducted by Dr. Regets who expressed no such concerns. AR 1430-31, citing AR 964-65.

Plaintiff's attorney cited Dr. Regets statement that Plaintiff appeared to be dealing with her physical difficulties "at a magnified level" and that it was not unusual for individuals with limited intellectual capacity to have a reduced ability to distract themselves from pain and fatigue. AR 1431-32, citing AR 969. When asked if this could explain Dr. Shadrach's observation that Plaintiff might be malingering, Dr. Akins stated that it was possible, but that he was uncertain if it was true in Plaintiff's case. AR 1432. Dr. Akins stated that Plaintiff's mental impairments would not meet listing 12.05. AR 1433.

When asked if the combination of Plaintiff's physical and mental impairments would make it difficult for Plaintiff to perform full-time work, Dr. Akins stated that Plaintiff's attorney was "preaching to the choir on that one" and that "it was clear that pain exacerbates psychiatric problems, and psychiatric problems typically exacerbate a person's perception of their pain." AR 1436-37. However, Dr. Akins stated that the Social Security Administration had not solicited his opinion on this question, and that that he thought it best to stay in his lane. AR 1437.

The ALJ assigned "significant weight" to Dr. Akins' opinion, specifically Dr. Akins' opinion that Plaintiff should be limited to simple repetitive tasks, in a workplace with no more than occasional interaction with peers/co-workers and the general public, and that

given her anxiety, she should not have strict time requirements. AR 1380. The ALJ

reasoned that Dr. Akins' opinion was consistent with the medical record. *Id.*

The ALJ also found that it was appropriate for Dr. Akins' to limit his scope of

review to Plaintiff's mental health, and stated that the inconsistencies discussed in the

hearing decision provided sufficient data points to contradict Dr. Langer's opinion and

Dr. Akins' conclusion that a closed period of disability was appropriate. AR 1380-81.

For the reasons discussed above, the ALJ has not provided specific and

legitimate reasons for discounting Dr. Langer's opinions. *See supra* Section I.A. Further,

Dr. Akins stated that because Dr. Langer's treatment notes did not cover a period of at

least 12 months, he was unable to offer an opinion that Plaintiff was disabled. AR 1440-

41. To the extent that Dr. Akins based his opinion on this conclusion, he erred, given

that Dr. Langer clearly treated Plaintiff for more than 12 months, and specifically opined

that Plaintiff's period of disability would extend back to July 2005. AR 954, 984, 1072-

73. Dr. Akins statement that Dr. Langer only treated Plaintiff a "handful" of times and

provided only a "small snapshot" of Plaintiff's functioning is inconsistent with Dr.

Langer's treatment notes, which indicate that he saw Plaintiff 14 times and knew

Plaintiff "quite well at that time." AR 1071, 1416, 1424.

The ALJ erred in relying upon Dr. Akins' opinion, which itself relied upon Dr.

Akins' speculation that Plaintiff's mental health treatment may have improved her

condition given an apparent lack of mental health treatment in 2009 and 2010, and Dr.

Akins' statement that a sufficiently motivated individual would be able to obtain medical

care despite an inability to pay. AR 1424-25, 1435-36; *see* Social Security Ruling

("SSR") 16-3p (If an individual fails to follow prescribed treatment that might improve

symptoms, an ALJ may find that the alleged intensity of an individual's symptoms are inconsistent with the record. However, an ALJ "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints.").

The ALJ has not provided specific, legitimate reasons for discounting Dr. Langer's opinions, and has given significant weight to Dr. Akins' opinion. Both agree that Plaintiff was disabled, at a minimum, for a closed period, with Dr. Akins stating that he was unable to find Plaintiff disabled primarily because of his mistaken belief that Dr. Langer had treated Plaintiff's mental impairments for less than 12 months. AR 1440-41. For the reasons discussed above, Dr. Akins' conclusion that Plaintiff's lack of treatment in 2009 and 2010 indicates that she was not disabled during this period is not supported by substantial evidence. Further, both Dr. Langer and Dr. Akins have indicated that Plaintiff's physical impairments could significantly impact her psychiatric impairments. AR 914, 1436-47. Further, Dr. Langer stated in January 2011 that given her presentation during their visits, "not much" was likely to have changed since their last appointment in October 2008. AR 1071-72.

The opinions of Dr. Langer and Dr. Akins are consistent with a finding that Plaintiff was disabled between her alleged onset date of February 10, 2006 and Dr. Shadrach's September 1, 2011 exam, after which Dr. Shadrach assessed less severe mental limitations. AR 1097-1102, 1125-27, 1360.

Accordingly, Plaintiff's Motion to Alter or Amend Judgment is GRANTED, and this case is remanded for an award of benefits as to the period between February 10, 2006 and August 31, 2011.

C. <u>Remand for an Award of Benefits</u>

"'The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d at 668.

The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only where

> "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

*Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).

The Ninth Circuit emphasized in *Leon v. Berryhill* that even when each element is satisfied, the district court still has discretion to remand for further proceedings or for award of benefits. 80 F.3d 1041, 1045 (9th Cir. 2017).

In this case, the record has been fully developed and further administrative proceedings would serve no useful purpose. The ALJ has failed to provide legally sufficient reasons for rejecting Dr. Langer's opinions or those portions of Dr. Akins' opinion consistent with a finding of disability. If this evidence were credited as true, the ALJ would be required to find Plaintiff disabled, at a minimum, between her alleged onset date, February 10, 2006, and the day before Dr. Shadrach's examination, August 31, 2011. The Court also considered the length of time Plaintiff has been waiting for a final disposition. *See Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Plaintiff filed her application for disability insurance benefits in 2006, and has been waiting 14 years for a final decision on her claim. AR 430-34, 1357.

<u>CONCLUSION</u>

Based on the foregoing discussion, Plaintiff's Motion to Alter or Amend Judgment is GRANTED and this case is remanded for an award of benefits as to the period between February 10, 2006 and August 31, 2011.

Dated this 27th day of February, 2020.

Theresa L. Fricke

Theresa L. Fricke
United States Magistrate Judge